IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MILLARD GUTTER COMPANY, a Corporation; <br><br> Plaintiff, <br><br> vs. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendant. | 8:18-CV-528 <br><br><br> **MEMORANDUM AND ORDER** |

## I.     INTRODUCTION

Plaintiff, Millard Gutter Company ("Millard"), sued Defendant, State Farm Fire & Casualty Company ("State Farm"), for breach of contract, committing unfair claims-settlement practices under Nebraska Revised Statute Section 44-1540, and violating the implied covenant of good faith and fair dealing in relation to several insurance contracts. Before the Court is State Farm's Motion to Strike Plaintiff's Summary Judgment Exhibits, Filing 63, and State Farm's Motion for Summary Judgment, Filing 37. For the reasons stated herein, the Court grants State Farm's motions.

## II.     BACKGROUND

In April 2013, a storm damaged the homes of thirteen Nebraska residents. Filing 39-1 at 1-11. Each homeowner had an insurance policy from State Farm that provided coverage for certain repair or replacement costs. Filing 39-1 at 1-18. Pursuant to the insurance policies, State Farm

1

would first pay the "actual cash value at the time of the loss of the damaged part of the property," and then, after completion of the repairs or replacements, State Farm would pay "the covered additional amount [the insured] actually and necessarily [spent] to repair or replace the damaged part of the property." Filing 39-1 at 16-18.

After sustaining property damage, each homeowner submitted a claim to State Farm. Filing 39-1 at 1-11. In return, State Farm paid the "actual cash value" of the damaged property as required by the insurance policies. Filing 39-1 at 44-66. To make repairs to their properties, each homeowner hired Millard, a contractor. Filing 39-2 at 5-17. Millard claims that it proposed to each homeowner that Millard would "take an assignment in exchange for the work to be done, and [the homeowners would] have to pay their deductible portion." Filing 41 at 4. In their dealings with Millard, each homeowner signed an "Authorization to Proceed." Filing 39-2 at 5-17. The document "grant[ed] authorization to [Millard] to proceed with the insurance repair work" and further authorized Millard "to negotiate approval for payment or reimbursement of expenses associated with any necessary repair work with [State Farm]." Filing 39-2 at 5-17. In addition, the document states, "Customer assigns to Contractor the right and power to make demand upon any potentially liable insurance company for payment, subject to Customer's continuing obligation, if any, to make payment of deductible." Filing 39-2 at 5-17.

In 2014 and 2015, Millard signed documents titled "Assignment" with five of the homeowners. Filing 39-2 at 205-09. The document reads, "In partial consideration for the services rendered by [Millard], [the homeowner] agrees to assign to [Millard] any benefit, claim and/or the right to proceeds from a claim against any insurance policy that may be available to provide payment or reimbursement of expenses associated with services rendered by [Millard]." Filing 39-2 at 205-09. It further states that Millard "would otherwise not perform repair services" without

the execution of the document and assigns "[Millard] the right and power to make demand upon any potentially liable insurance company for payment, subject to the [homeowner's] continuing obligation, if any, to make payment of deductible." Filing 39-2 at 205-09.

After the homeowners signed the "Authorization to Proceed" or the "Assignment," Millard sent estimates to State Farm. Filing 39-2 at 21-66; Filing 41 at 7-8. State Farm disputed the estimates, arguing that it included duplicative charges, excessive quantities of repair materials, and unwarranted mark-ups for overhead. Filing 39-2 at 68-203. Millard then sued State Farm. Filing 47 at 1-7. At some point in time, Millard claims it and its subcontractors completed some work on the homeowners' properties.[1] Filing 41 at 6-7; Filing 54 at 18.

In its Amended Complaint,[2] Millard argues that State Farm has breached the insurance policies, committed unfair claims-settlement practices in violation of Nebraska Revised Statute Section 44-1540, and violated the implied covenant of good faith and fair dealing under the insurance policies. Filing 47 at 2-7. Millard argues the homeowners validly assigned their interests in their insurance policies to Millard, thus providing it standing to sue under the insurance policies.

---

[1] There is no evidence before the Court showing what work was completed by Millard and its subcontractors.
[2] Millard filed its Amended Complaint after State Farm filed its Motion for Summary Judgment. Filing 37; Filing 47. The Amended Complaint is virtually identical to the original Complaint, except that it changed the number of alleged assignees from fourteen to thirteen. Filing 1-1 at 1-2, 8; Filing 47 at 1-2, 9. The parties, claims, and legal analysis otherwise remain the same. Although the summary-judgment motion is made as to the original Complaint, the Court will treat it as if made against the Amended Complaint. *See ARA, Inc. v. Barnes Pers. Mgmt., Inc.*, No. CIV. 12-2812 JRT/JSM, 2014 WL 3748633, at *4 n.3 (D. Minn. July 30, 2014) (ruling on a motion for summary judgment filed before an amended complaint); *see also* FED. R. CIV. P. 56(b) ("[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery."). Further, it is appropriate for the Court to rule under these circumstances because the deadline for filing a motion for summary judgment has long passed. Filing 34 (showing that deadline for filing summary judgment was June 18, 2021). Lastly, it appears State Farm was aware of Millard's intent to file an amended complaint omitting the fourteenth assignee at the time it filed its summary-judgment motion. *See* Filing 42 at 2 n.1 ("Damage to the home of the fourteenth resident . . . is not addressed in this motion as Millard has indicated that it intends to dismiss its claims as to that homeowner.").

Filing 47 at 1. On June 21, 2021, State Farm filed its Motion for Summary Judgment, challenging the validity of the assignments made to Millard. Filing 37; Filing 42 at 24-31.

## III. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Failure to Properly File Exhibits

Before proceeding to the merits of State Farm's summary-judgment motion, the Court addresses Millard's failure to file exhibits in support of its Brief in Opposition to Summary Judgment. The Nebraska District Court's Local Rules and Procedures provide, "When filing the opposing brief, the opposing party must also file and serve supporting evidentiary material not previously filed." NECivR 7.1(b)(2)(A). This brief must be filed within twenty-one days after service of the summary-judgment motion. NECivR 56.1(b)(3). Importantly, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1).

On June 21, 2021, State Farm filed its Motion for Summary Judgment. Filing 37. The Court granted Millard two extensions to file its responsive brief, Filing 50; Filing 53, after which Millard filed its Brief in Opposition to Summary Judgment on July 27, 2021, Filing 54. Accompanying this brief was an index with an attorney affidavit. Filing 55. However, the index included no

evidence. Counsel for State Farm contacted Millard's counsel, by phone and by email, on July 30, August 3, and August 11, 2021, alerting him that Millard had not filed exhibits to support its opposition brief. Filing 61-1 at 1. On August 11, 2021, Millard's counsel responded by sending, but not filing, only two of Millard's exhibits. Filing 61-1 at 1. Finally, on August 24, 2021, State Farm filed its Reply Brief in support of its summary-judgment motion, without the benefit of seeing Millard's evidence in opposition to summary judgment. Filing 60. Nearly a month after filing its brief in opposition, Millard filed what appear to be the exhibits listed in its original index on August 26, 2021, without leave of court. Filing 62. State Farm filed a motion to strike Millard's improper filing of its exhibits on September 2, 2021. Filing 63. State Farm states it was prejudiced by Millard's conduct. Filing 63.

The Court grants State Farm's motion to strike the late-filed exhibits.[3] Millard's failure to file evidence in opposition to State Farm's motion for summary judgment, after multiple warnings from State Farm's counsel, is inexcusable. State Farm noted in its motion to strike that Millard's neglect gave State Farm "no opportunity to assess or address the contents of [the] exhibits." Filing 64 at 3. State Farm had no ability to fully anticipate what Millard would ultimately file. Filing 64 at 3. The Court concludes State Farm was prejudiced when it had to file a reply brief responding to exhibits that had never been provided to it and responding to Millard's arguments that relied on the unfiled exhibits. See Buffets, Inc. v. Leischow, 732 F.3d 889, 895 (8th Cir. 2013) (upholding district court's rejection of evidence where party did not file evidence until after opposing party had filed its reply because "opposing party [had] no opportunity to respond in the normal briefing process").

---

[3] Even if State Farm had not filed a motion to strike the late-filed exhibits, the Court was prepared to strike the exhibits for failure to timely file them in clear violation of the Court's local rules.

State Farm has also persuasively shown that Millard acted without any diligence in meeting the Court's deadlines. Filing 64 at 2. Counsel for State Farm alerted Millard three times and repeatedly went to the time and expense of requesting more time to file its reply brief. Millard's conduct is a blatant disregard of the Court's rules. Indeed, this Court had already spent considerable time working on these filings prior to Millard finally filing their missing exhibits on August 26, 2021.[4]

The Eighth Circuit recognizes that "[d]istrict courts have broad discretion to set filing deadlines and enforce local rules." *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 579 (8th Cir. 2006). In accordance with its broad discretion, the Court will consider State Farm's statement of facts as true and will not consider Millard's untimely exhibits. *See Holloway v. Union Pac. R.R. Co.*, 762 F. App'x 350, 352 (8th Cir. 2019) (upholding district court's decision to admit statement of facts when opposing party failed to file evidence); *Hamilton v. Nicholson*, No. 803CV443, 2007 WL 1340968, at *3 (D. Neb. Mar. 12, 2007) (granting summary judgment against party failing to file evidence).

**C. Breach of Contract, Unfair Claims Practices, and Violation of the Covenant of Good Faith and Fair Dealing**

In its Motion for Summary Judgment, State Farm argues that the Nebraska homeowners did not validly assign their interests in their insurance policies to Millard. Filing 42 at 25-31. Millard responds that assignments of insurance policies are enforceable under Nebraska law and that the homeowners and Millard made oral agreements to assign the insurance policies prior to executing the documents at issue in this case. Filing 54 at 14-21. The Court finds that the Nebraska homeowners did not validly assign their interests because the plain language of the "Authorization

---

[4] The Court further notes that this matter, which is a relatively straight-forward contract dispute, has now been pending with this Court nearly three years, with seven amended case progression orders.

to Proceed" documents do not assign the claims against State Farm to Millard and the "Assignment" documents are not reasonably definite and certain so as to be enforceable. Thus, State Farm is entitled to summary judgment as a matter of law.

   1. *The "Authorization to Proceed" Documents*

State Farm first attacks the "Authorization to Proceed" documents, claiming that they did not transfer the homeowners' interests in their insurance policies to Millard. The Court agrees.

"Under Nebraska law, a court interpreting a contract, such as an insurance policy, must first determine, as a matter of law, whether the contract is ambiguous." *Millard Gutter Co. v. Cont'l Cas. Co.*, No. 20-2760, 2021 WL 3610357, at *2 (8th Cir. Aug. 16, 2021). (citing *Reisig v. Allstate Ins. Co.*, 645 N.W.2d 544, 550 (Neb. 2002)). When the contract terms are clear, the courts give them "their plain and ordinary meaning as the ordinary or reasonable person would understand them." *Id.* (citing *Reisig*, 645 N.W.2d at 550).

The Eighth Circuit, in a case involving the same plaintiff as here, found similar contractual language unambiguous in *Millard Gutter Company v. Continental Casualty Company*. *Id.* The authorization forms at issue in that case permitted Millard to "'make demand upon any potentially liable insurance company for payment' of the repair costs and 'to negotiate approval for payment or reimbursement of expenses associated with any necessary repair work' with the insurers." *Id.* Affording the terms their plain and ordinary meaning, the Eighth Circuit found they did not assign the policyholders' interests to Millard. *Id.*

The exact same terms are at issue in this case. The "Authorization to Proceed" documents only authorized Millard to proceed with repair work, to negotiate with State Farm, and to demand payment from State Farm. Filing 39-2 at 5-17. The terms are clear, and a reasonable person would not construe them to mean that the homeowners in this case assigned their rights under the

insurance policies to Millard. "Rather, the plain language of the authorizations permits [Millard] only to seek payment from the defendants and to negotiate the terms of those payments with the defendants." *Id.* Thus, as to the homeowners who only signed the "Authorization to Proceed" forms, State Farm is entitled to summary judgment.

   2. *The Assignment Forms*

State Farm next contests the validity of the "Assignment" documents. Filing 42 at 25-29. Relying principally on the Nebraska Supreme Court case *Valley Boys, Incorporated v. American Family Insurance Company*, 947 N.W.2d 856 (Neb. 2020), State Farm argues that the assignments are invalid because the "Assignment" documents do not "set forth the scope or price of the work (to be) performed in exchange for the transfer of the insured's interests against State Farm." Filing 42 at 25.

"An assignment is a contract between the assignor and the assignee, and is interpreted or construed according to the rules of contract construction." *Valley Boys*, 947 N.W.2d at 865. In Nebraska, to sue for breach of a contract the plaintiff must be the real party in interest. *See id.* at 866 (citing *Jacobs Eng'g Grp. Inc. v. ConAgra Foods, Inc.*, 917 N.W.2d 435, 451 (Neb. 2018)); *see also* Neb. Rev. Stat. § 25-301 ("Every action shall be prosecuted in the name of the real party in interest . . . ."). A valid assignment causes the assignor to be the real party in interest; otherwise, the assignee remains the real party in interest. *Id.*

Millard vigorously argues that assignments of claims under insurance policies are enforceable under Nebraska Law. Filing 54 at 14-17. In general, that is correct. *See Newman v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 239 N.W. 464, 465 (Neb. 1931) (enforcing assignment of insurance policy). But the issue is whether the assignments *in this case* are valid.

9

Millard has the burden of establishing that the assignments are enforceable. *Valley Boys*, 947 N.W.2d at 867. "It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements." *Davco Realty Co. v. Picnic Foods, Inc.*, 252 N.W.2d 142, 146 (Neb. 1977). While absolute certainty is not required, the terms must be ascertainable with reasonable certainty so that, at the time of performance, there exists some standard to test performance. *Id.* A promise is too indefinite for legal enforcement "[w]here the promisor retains an unlimited right to decide later the nature or extent of his or her performance." *Valley Boys*, 947 N.W.2d at 868.

The terms of the "Assignment" document are not reasonably certain or definite. Notably absent from the agreement is the scope of work Millard was to perform. *See* Webster Design Assocs., Inc. v. Neb. City Tourism & Com., Inc., No. A-18-984, 2019 WL 4023744, at *5 (Neb. Ct. App. Aug. 27, 2019) (holding that, in the context of a contract for advertising and marketing work, price and scope of work are essential terms). The "Assignment" document only says the assignment is made "[i]n partial consideration for the services rendered by [Millard]" and that it serves "as inducement to [Millard] to proceed forward [with the repair services]." Filing 39-2 at 205-09. In the event of a breach, the Court would have no standard by which to test Millard's performance. *See City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 741 (Neb. Ct. App. 2011) (holding that no contract forms "if the essential terms are left open or are so indefinite that a court could not determine whether a breach had occurred or provide a remedy"). Therefore, the lack of these essential terms precludes contract formation.

As State Farm correctly notes, the Nebraska Supreme Court case of *Valley Boys* is instructive. In *Valley Boys*, the plaintiff roofing company sued the defendant insurance company, alleging that the insurance company failed to pay the full amounts due under several insurance

policies. *Valley Boys*, 947 N.W.2d at 861. In that case, as in this case, the homeowners purportedly assigned their interests in their insurance policies to the roofing company. *Id.* Eight of the nine assignments referenced a "Customer Service Agreement," which stated that "this contract may not include an explicit price" and that the roofing company's performance was "contingent upon [the roofing company] reaching agreement with the insurance company on the scope of repairs and/or replacement." *Id.* at 862. The insurance company, as State Farm does in this case, defended on the grounds that the assignments were invalid because there was never an agreement on scope of work and price. *Id.* at 862.

After the trial court entered judgment notwithstanding the verdict against the roofing company, the roofing company appealed, and the Nebraska Supreme Court affirmed in favor of the insurance company. *Id* at 870. The Court observed, "A review of the framework of insurance coverage in this case shows that 'scope of work' and 'price' are vital terms." *Id.* at 868. Without sufficiently detailing the "scope of work," the roofing company had improperly retained an "unlimited right to decide the nature of extent of [its] performance," making its promise to perform too indefinite for legal enforcement. *Id.* at 868-69.

The same result is warranted in this case. Scope of work is an essential term of these agreements. Without this essential term, Millard improperly retains an "unlimited right to decide later the nature or extent of [its] performance," *id.*, and the Court would have no ability to measure performance in the event of a breach.

Millard attempts to rescue its claim by stating that the "Millard Roofing and the customer come [sic] to an oral agreement wherein they will assign their claim to allow Millard Gutter to stand in the insured's shoes in consideration for Millard performing work." Filing 54 at 18. The only evidence of an oral agreement in the record is the testimony of James Eggers, the owner of

11

Millard, claiming that when Millard completed its initial inspection it "proposed" to the homeowners that Millard would "take an assignment in exchange for the work to be done." Filing 41 at 4. A mere proposal does not form a contract. *See Linscott v. Shasteen*, 847 N.W.2d 283, 289 (Neb. 2014) ("To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract."). There is no evidence that the homeowners agreed to this proposal. Moreover, this alleged oral agreement suffers from the same lack of definiteness and certainty as the written "Assignment" agreement. *See City of Scottsbluff*, 809 N.W.2d at 741. As such, standing alone it cannot form a valid assignment contract, nor can it cure the defects within the written "Assignment" agreement by providing extrinsic evidence of the parties' agreement.

The "Assignment" documents are unenforceable as a matter of law.[5] Therefore, Millard is not the real party in interest in this suit. State Farm is thus entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendant State Farm's Motion to Strike Plaintiff's Exhibits and Motion for Summary Judgment on all claims in plaintiff Millard Gutter Company's Amended Complaint. Accordingly,

IT IS ORDERED:

1. Defendant's Motion to Strike Plaintiff's Exhibits, Filing 63, is granted;

2. Defendant's Motion for Summary Judgment, Filing 37, is granted;

---

[5] Millard also argues that "Millard performing the work" constitutes "'extrinsic evidence' of the assignment." Filing 54 at 18. However, there is no evidence in the record of what work Millard agreed to perform. Bare assertions in Millard's opposition brief are insufficient to show that Millard has performed and that its performance is "extrinsic evidence" of the assignment. *See Barton v. Taber*, 908 F.3d 1119, 1125-26 (8th Cir. 2018) (mere assertions in a brief are not evidence). Moreover, even if Millard has performed some work, it does nothing to resolve the problem of determining all of Millard's obligations under the "Assignment" documents. *See Acklie v. Greater Omaha Packing Co.*, 944 N.W.2d 297, 306 (Neb. 2020) ("[A contract] must identify the subject matter and spell out the essential commitments and agreements with respect thereto.").

3. Plaintiff's Amended Complaint, Filing 47, is dismissed; and

4. The Court will enter a separate judgment.

Dated this 7th day of September, 2021.

                                                       BY THE COURT:

                                        Brian C. Buescher
                                        United States District Judge

13